No. 2013-1325

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

_____

NOVOZYMES A/S and NOVOZYMES NORTH AMERICA, INC.,

*Plaintiffs-Appellants,*

v.

DUPONT NUTRITION BIOSCIENCES APS, GENENCOR INTERNATIONAL WISCONSIN, INC., DANISCO US INC., and DANISCO USA INC.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin in No. 10-CV-0251,
Senior Judge Barbara B. Crabb.

_____

## NONCONFIDENTIAL BRIEF FOR DEFENDANTS-APPELLEES

_____

Tracey B. Davies
  *Principal Attorney*
Michael A. Valek
Jason C. McKenney
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX  75201
(214) 698-3100

*Counsel for Defendants-Appellees*

# CERTIFICATE OF INTEREST

Counsel for Defendants-Appellees DuPont Nutrition Biosciences ApS, Genencor International Wisconsin, Inc., Danisco US Inc., and Danisco USA Inc., certifies the following:

1.     The full name of every party or amicus represented by me is:

DuPont Nutrition Biosciences ApS, Genencor International Wisconsin, Inc., Danisco US Inc., and Danisco USA Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3.     All parent corporations and any publicly-held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

E.I. du Pont de Nemours and Company, DuPont Denmark Holding ApS, and Danisco Holding USA Inc.

4.    The names of all law firms and the partners or associates that

appeared for the parties now represented by me in the trial court or agency or are

expected to appear in this court are:

| Gibson Dunn & Crutcher LLP | Vinson & Elkins LLP |
|---|---|
| Tracey B. Davies | John P. Elwood |
| Thomas G. Hungar | Jessica C. Mederson |
| Michael A. Valek | Stephen C. Stout |
| William B. Dawson | Jeffrey Gritton |
| Jason C. McKenney | Nicki Glauser |
| Jessica Ou | Deidre Dorvall |
| | Janice Ta |

**Godfrey & Kahn, S.C.**
Kendall W. Harrison

<table>
<tr><td>March 3, 2014</td><td>/s/ Tracey B. Davies</td></tr>
<tr><td>Date</td><td>Tracey B. Davies</td></tr>
</table>

*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ................................................................. ix

INTRODUCTION ...................................................................................................1

STATEMENT OF THE ISSUES ...........................................................................2

STATEMENT OF THE CASE AND RELEVANT FACTS ....................................2

    I.      The Underlying Litigation.................................................................2

    II.     DuPont's Production Of Electronic Documents ...................................4

    III.    The Clerk And District Court Award DuPont Its Electronic Discovery Costs.........................................................................................6

SUMMARY OF ARGUMENT ............................................................................10

STANDARD OF REVIEW ..................................................................................13

ARGUMENT .......................................................................................................14

    I.      The Clerk Properly Taxed DuPont's Electronic Discovery Costs, In Accordance With The Seventh Circuit's Inclusive View Of § 1920 ...................................................................................14

         A.    The Seventh Circuit Has Consistently Applied A Broad Interpretation Of § 1920 Costs....................................................14

         B.    In *Hecker*, The Seventh Circuit Broadly Interpreted "Costs Of Making Copies Of Any Materials" To Include The Types Of Electronic Discovery Costs Awarded Here .......19

         C.    The Court Must Faithfully Apply Seventh Circuit Law To The Instant Appeal ............................................................32

         D.    *Taniguchi* Is Consistent With Seventh Circuit Law .................34

    II.     The District Court Did Not Abuse Its Discretion By Refusing To Reduce DuPont's Necessary Electronic Discovery Costs.............38

A.    DuPont Is Presumptively Entitled To Costs As The Prevailing Party..........................................................................38

B.    DuPont's Electronic Discovery Costs Were Reasonable And Necessary Because They Were Incurred To Respond To Novozymes's Discovery Requests ......................................41

C.    The Amount Of Electronic Discovery Costs DuPont Incurred And The District Court Awarded Do Not Amount To A Per Se Abuse Of Discretion...............................43

CONCLUSION...................................................................................47

## CONFIDENTIAL MATERIAL OMITTED

The material omitted on pages 7 and 41 are specific amounts of electronic discovery expenses incurred by DuPont pursuant to its contract with its electronic discovery vendor.

# TABLE OF AUTHORITIES

**Page(s)**

## **Cases**

*Ajinomoto Co., Inc. v. Int'l Trade Comm'n,*
    597 F.3d 1267 (Fed.Cir. 2010) ..........................................................39

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
    421 U.S. 240 (1975)............................................................... 7, 35

*Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.,*
    249 F.3d 1293 (11th Cir. 2001) ........................................................34

*BASF AG v. Great Am. Assur. Co.,*
    595 F. Supp. 2d 899 (N.D. Ill. 2009)...............................................45

*Beamon v. Marshall & Ilsley Trust Co.,*
    411 F.3d 854 (7th Cir. 2005) ..........................................................37

*Bus. Sys. Eng., Inc., v. Int'l Bus. Machines Corp.,*
    249 F.R.D. 313 (N.D. Ill. 2008).......................................................26

*CBT Flint Partners v. Return Path, Inc.,*
    737 F.3d 1320 (Fed. Cir. 2013) ......................... 26, 28, 31, 32, 36, 41

*Cefalu v. Village of Elk Grove,*
    211 F.3d 416 (7th Cir. 2000) ........................................ 16, 17, 19, 30

*Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.,*
    801 F.2d 908 (7th Cir. 1986) ..........................................................36

*Collins v. Gorman,*
    96 F.3d 1057 (7th Cir. 1996) ..........................................................15

*Comrie v. IPSCO Inc.,*
    2010 WL 5014380 (N.D. Ill. Dec. 1, 2010)......................................22

*Cooper v. Eagle River Mem'l Hosp., Inc.,*
    270 F.3d 456 (7th Cir. 2001) ..........................................................14

Page(s)

*Country Vintner of North Carolina, LLC v. E. & J. Gallo Winery, Inc.*,
   718 F.3d 249 (4th Cir. 2013) ................................................................ 25, 28, 32

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
   482 U.S. 437 (1987)......................................................................................35

*Crues v. KFC Corp.*,
   768 F.2d 230 (8th Cir. 1985) .........................................................................15

*Extra Equipamentos E Exportação Ltda. v. Case Corp.*,
   541 F.3d 719 (7th Cir. 2008) ......................................................... 17, 18, 29

*Finchum v. Ford Motor Co.*,
   57 F.3d 526 (7th Cir. 1995) ...........................................................................44

*Goldberg v. 401 Wabash Venture LLC*,
   2013 WL 4506071 (N.D. Ill. Aug. 23, 2013) ...............................................21

*Gwin v. Am. River Transp. Co.*,
   482 F.3d 969 (7th Cir. 2007) .........................................................................14

*Hairline Creations, Inc. v. Kefalas*,
   664 F.2d 652 (7th Cir. 1981) .........................................................................32

*Harney v. City of Chicago*,
   702 F.3d 916 (7th Cir. 2012) .........................................................................38

*Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*,
   38 F.3d 1429 (7th Cir. 1994) ....................................................... 17, 26, 39

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ........................................ 11, 19, 20, 21, 24, 29, 41

*Hecker v. Deere & Co.*,
   No. 3:06-cv-719, ECF No. 132, Order re Bill of Costs at 11 (W.D. Wis. Dec.
   31, 2007) ................................................................................. 11, 20, 29

*Held v. Held*,
   137 F.3d 998 (7th Cir. 1998) .........................................................................17

Page(s)

*In re Int'l Med. Prosthetics Research Assocs., Inc.*,
739 F.2d 619 (Fed. Cir. 1984) ......................................................33

*In re Online DVD Rental Antitrust Litig.*,
2012 WL 1414111 (N.D. Cal. Apr. 20, 2012)........................... 24, 45

*In re Ricoh Co., Ltd. Patent Litig.*,
661 F.3d 1361 (Fed. Cir. 2011) .....................................................37

*Jardin v. DATAllegro*,
2011 WL 4835742 (S.D. Cal. Oct. 12, 2011).................................31

*Krocka v. City of Chicago*,
203 F.3d 507 (7th Cir. 2000) .........................................................45

*Ladien v. Astrachan*,
128 F.3d 1051 (7th Cir. 1997) .......................................................14

*LeMoine v. Combined Commc'ns Corp.*,
1996 WL 435115 (N.D. Ill. July 31, 1996) ....................................46

*LG Electronics U.S.A., Inc. v. Whirlpool Corp.*,
2011 WL 5008425 (N.D. Ill. Oct. 20, 2011) ............................ 22, 31

*Lockheed Martin Idaho Techs. Co. v. Lockheed Martin Advanced Envtl. Sys., Inc.*,
2006 WL 2095876 (D. Idaho July 27, 2006).................................45

*M.T. Bonk Co. v. Milton Bradley Co.*,
945 F.2d 1404 (7th Cir. 1991) .................................................. 37, 40

*Majeske v. City of Chicago*,
218 F.3d 816 (7th Cir. 2000) .........................................................40

*Mid-Con Freight Sys., Inc. v. Michigan Pub. Serv. Comm'n*,
545 U.S. 440 (2005)......................................................................27

*Netcraft Corp. v. eBay, Inc.*,
2008 WL 4175039 (W.D. Wis. June 12, 2008)..............................46

Page(s)

*Nilssen v. Osram Sylvania, Inc.*,
  2007 WL 257711 (N.D. Ill. Jan. 23, 2007)........................................26

*Northbrook Excess Surplus Ins. Co. v. Procter & Gamble Co.*,
  924 F.2d 633 (7th Cir. 1991) ..............................................................39

*Novozymes A/S v. Danisco A/S*,
  2010 WL 3783682 (W.D. Wis. Sept. 24, 2010) ..................................3

*Novozymes A/S v. DuPont Nutrition Biosciences APS*,
  723 F.3d 1336 (Fed. Cir. 2013) ...........................................................4

*Panduit Corp. v. All States Plastic Mfg. Co.*,
  744 F.2d 1564 (Fed. Cir. 1984) .........................................................33

*Park v. City of Chicago*,
  297 F.3d 606 (7th Cir. 2002) .............................................................37

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
  2012 WL 1610979 (N. D. Cal. May 8, 2012)............................. 23, 24

*Promote Innovation LLC v. Roche Diagnostics Corp.*,
  2011 WL 3490005 (S.D. Ind. Aug. 9, 2011) ......................................22

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
  674 F.3d 158 (3d Cir. 2012) ................................................. 10, 28, 32

*Republic Tobacco Co. v. N. Atl. Trading Co.*,
  481 F.3d 442 (7th Cir. 2007) .............................................................14

*Ridings v. Riverside Med. Ctr.*,
  2007 WL 924020 (C.D. Ill. Mar. 26, 2007)........................................22

*SK Hand Tool Corp. v. Dresser Indus., Inc.*,
  852 F.2d 936 (7th Cir. 1988), *cert. denied*, 492 U.S. 918 (1989) .............. 13, 14

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) .........................................................38

Page(s)

*Sunbeam Prods., Inc. v. Homedics, Inc.*,
   2010 WL 2571983 (W.D. Wis. June 21, 2010)..................................22

*Tampa Bay Water v. HDR Eng'g, Inc.*,
   2012 WL 5387830 (M.D. Fla. Nov. 2, 2012)....................................45

*Taniguchi v. Kan Pacific Saipan, Ltd.*,
   __ U.S.___, 132 S.Ct. 1997 (2012)........................................... 10, 12, 34, 35, 36

*Taniguchi v. Kan Pacific Saipan, Ltd.*,
   633 F.3d 1218 (9th Cir. 2011) ............................................24

*U.S. Neurosurgical, Inc. v. City of Chicago*,
   572 F.3d 325 (7th Cir. 2009) ............................................... 13, 37, 43

*United States ex. rel. Yannacopoulos v. General Dynamics*,
   2012 WL 1748120 (N.D. Ill. May 15, 2012).....................................21

*Weeks v. Samsung Heavy Indus.*,
   126 F.3d 926 (7th Cir. 1997) ........................................... 13, 37, 38, 40

*West Wind Africa Line, Ltd. v. Corpus Christi Marine Servs.*,
   834 F.2d 1232 (5th Cir. 1988) ............................................14

*Z Trim Holdings, Inc. v. Fiberstar, Inc.*,
   2008 WL 3843507 (W.D. Wis. Aug. 12, 2008) ...............................43

*Zahran v. Cleary Bldg. Corp.*,
   2 Fed.Appx 497 (7th Cir. 2001).........................................44

## **Statutes**

28 U.S.C. § 1920.......................................................................... passim

Judicial Administration and Technical Amendments Act of 2008,
   Pub. L. No. 110-406 § 6, 122 Stat. 4291 (2008) ..............................39

Page(s)

## **Other Authorities**

1 Jay E. Grenig & William C. Gleisner, III,
    eDiscovery & Digital Evidence § 7:3 (2013) .....................................46

Amelia Phillips et al.,
    *E-Discovery: An Introduction to Digital Evidence* (Cengage Learning 2014) ..27

Judicial Administration and Technical Amendments Act of 2008,
    154 Cong. Rec. H10270 (Sept. 27, 2008).........................................25

Merriam-Webster Dictionary online,
    http://www.merriam-webster.com/dictionary/copy
    (last visited Mar. 2, 2014)...................................................24

Merriam-Webster Dictionary online, http://www.merriam-
    webster.com/dictionary/materials..............................................25

The Sedona Conference, *The Sedona Conference Glossary:*
    *E-Discovery & Digital Information Management* (3rd ed. 2010).........25, 26, 27

## **Rules**

Fed. R. Civ. P. 26 .................................................................4

Fed. R. Civ. P. 34 ................................................................42

Fed. R. Civ. P. 54 .........................................................6, 13, 14

## STATEMENT OF RELATED CASES

Counsel for Defendants-Appellees DuPont Nutrition Biosciences ApS, Genencor International Wisconsin, Inc., Danisco US Inc., and Danisco USA Inc. ("DuPont") certifies the following pursuant to Federal Circuit Rule 47.5:

1.     A separate appeal from the same underlying civil action was previously before this Court in Appeal No. 2012-1433, which was heard by Chief Judge Rader, Judge Schall, and Judge Bryson, and was decided on July 22, 2013 in *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336 (Fed. Cir. 2013), in DuPont's favor. Novozymes's Petition for Rehearing *En Banc* was denied on October 23, 2013.

2.     To the best of counsel's knowledge, there are no related cases pending in this or any other court.

## INTRODUCTION

The district court held that DuPont's costs required to facilitate copying its native Electronically Stored Information ("ESI") into the agreed-upon production format constituted taxable "costs of making copies of any materials where the copies are necessarily obtained for use in the case," within the meaning of 28 U.S.C. § 1920(4). In reaching that conclusion, the district court firmly grounded its holding in the language of the statute and in accordance with Seventh Circuit and Supreme Court precedent. Novozymes's argument that Seventh Circuit law— which governs this appeal—precludes the district court from awarding DuPont these types of electronic discovery costs is incorrect. Novozymes is similarly wrong to contend that the Seventh Circuit would follow a more limited interpretation of § 1920(4).

This Court should resist Novozymes's urging to disregard binding Seventh Circuit authority and improperly second-guess the district court's findings as to the reasonableness and necessity of DuPont's § 1920 costs. Contrary to Novozymes's assertions, the Seventh Circuit takes a broader approach to the scope of recoverable costs under § 1920 than do other circuits, and specifically allows taxation of exactly the costs awarded by the district court below. And, as this Court's precedent dictates, Seventh Circuit law governs in this appeal. Finally, no legal or factual basis exists to support Novozymes's alternative argument that the district

1

court and clerk abused their discretion when they twice considered, and rejected, Novozymes's generalized claim that DuPont simply paid too much for electronic discovery services—services it had to incur when Novozymes brought the underlying suit.

## STATEMENT OF THE ISSUES

1.    Did the district court correctly conclude that the electronic discovery costs substantiated and claimed by DuPont were taxable "costs of making copies of any materials" under 28 U.S.C. § 1920(4), when the Seventh Circuit had previously held that the same types of electronic discovery costs were recoverable?

2.    Did the district court and clerk of the court abuse their discretion when they each found that DuPont's electronic discovery costs were reasonable and necessary for the litigation, when Novozymes did not contest that these costs were necessary to produce documents in the parties' agreed format and did not point to a single item as unreasonable?

## STATEMENT OF THE CASE AND RELEVANT FACTS

### I.    The Underlying Litigation

DuPont (formerly Danisco[1]) and Novozymes are the two main competitors in the production and sale of genetically-modified alpha-amylase enzymes used in the process of converting corn and other plant-based material into ethanol.  A131-

---

[1]  While the underlying litigation was pending, DuPont acquired Danisco.

137.  On May 11, 2010, Novozymes was granted U.S. Patent No. 7,713,723 ("the '723 patent") and on that very same day initiated patent litigation against DuPont, asserting that DuPont's then-flagship product line, which had been on the market for years, contained the alpha-amylase variant allegedly claimed in that patent. A24, A134-136, A188-189.  DuPont denied infringement and challenged Novozymes's patent as invalid and unenforceable. A194-226.

On July 22, 2010, Novozymes moved for a preliminary injunction.  A26. DuPont argued in opposition that Novozymes's patent was invalid for lack of an adequate written description.  *Novozymes A/S v. Danisco A/S*, 2010 WL 3783682, at *5-10 (W.D. Wis. Sept. 24, 2010).  After evaluating the nature of the disclosure in the '723 patent and proffered expert testimony, the district court held that a "substantial question" existed as to whether the '723 patent satisfied the written description requirement and, therefore, refused to issue an injunction.  *Id.* at *5, *11.

Following a nine-day trial in October 2011, a jury found that some of DuPont's accused products willfully infringed the '723 patent, upheld the validity of the '723 patent, and awarded Novozymes $18.2 million dollars in damages. A338-342.  However, the district court subsequently overturned the jury's verdict and granted DuPont's Rule 50(b) motion for judgment as a matter of law that all the claims of the '723 patent were invalid for lack of an adequate written

description.  A343-362.  The district court amended its judgment, and Novozymes appealed.  A363-365.  A divided panel of this Court affirmed.  *See Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1351 (Fed. Cir. 2013).  This Court subsequently denied Novozymes's petition for rehearing *en banc*.  *See id.*  The Supreme Court denied Novozymes's petition for writ of certiorari on March 3, 2014.

## II.    DuPont's Production Of Electronic Documents

As Novozymes observes in its brief, the parties exchanged discovery requests beginning in July 2010.  Opening Brief of Plaintiffs-Appellants Novozymes ("Novozymes-Br.") 3.  These included requests for the production of documents encompassing both paper documents and electronically stored information ("ESI"), as authorized by Federal Rules of Civil Procedure 26 and 34. *Id.*  In the Joint Pretrial Statement submitted to the district court, DuPont and Novozymes agreed to a specific format for their forthcoming productions of ESI. Relevant here, the specification mandated:  (1) that all ESI "be produced as single-page TIFF images"; (2) with "extracted OCR text files"; (3) that all agreed "metadata fields" be separately produced; (4) that the parties provide "load file[s]"; and (5) that all documents contain Bates-numbering.  *Id.*; A925.  The production format excluded Microsoft Excel files from the TIFF-conversion requirement and instead allowed for this narrow class of files to be produced natively.  *Id.*

DuPont solicited competitive bids from electronic discovery vendors to assist in complying with the agreed-upon ESI production format. A771 ¶30. After receiving bids from two vendors, DuPont chose Daegis, the vendor that submitted the lower rate. *Id*. DuPont also selected Daegis because its counsel had previously worked with Daegis and found that it provided good service at reasonable prices. A771 ¶29. DuPont retained Daegis to provide services for a broad range of necessary electronic discovery activities, from securing copies of the native ESI from DuPont's computer systems, to processing, extraction, and eventual production of materials in the format set forth in the Joint Pretrial Statement. A761-763 ¶¶1-9. Indeed, Novozymes has not disputed that all of the activities that Daegis performed were necessary to copy DuPont's native ESI into the agreed-upon production format.

In addition to providing services necessary to the initial collection and copying of DuPont's native ESI, Daegis performed a significant amount of standard ESI "processing." A761-763 ¶¶1-9. For instance, Daegis "culled" the initial copies of DuPont's native ESI, which included, in part, extracting the metadata fields the parties agreed to produce and separately copying those fields into a producible format. A762 ¶5. Daegis next copied DuPont's ESI into a database, and after review by counsel, converted the native version of responsive electronic documents into TIFF images ("TIFF conversion") and electronically

embedded production numbers and confidentiality designations on those TIFF images. *Id.* Those documents designated for production underwent OCR processing to preserve the native data's text searching capabilities, as mandated by the parties' agreement to provide "OCR text files" as part of the final production set. *Id.*; A925. Daegis then copied the final components of DuPont's ESI production onto DVDs to ship to Novozymes. A762 ¶5. Daegis also managed the flow of DuPont's data through this required process, resolving problems that arose along the way. A761-762. For example, Daegis performed significant additional work to copy DuPont's information from a "non-standard Lotus database" into the final production format. A762 ¶6. By the end of discovery, DuPont had produced 82,925 unique electronic documents comprising 325,645 pages to Novozymes. A762-763 ¶8.

## III. The Clerk And District Court Award DuPont Its Electronic Discovery Costs

Having prevailed in invalidating Novozymes's patent and thereby defeating all of Novozymes's infringement claims, DuPont sought to recover, pursuant to Rule 54 and 28 U.S.C. § 1920, a host of recoverable costs, including the costs it incurred to copy and convert ESI from its native format into the parties' agreed production format (as detailed in the Joint Pretrial Statement). A735-736. Specifically, in the Amended Bill of Costs it submitted to the clerk of the district court, DuPont identified approximately $883,000.00 in taxable costs and itemized

6

those expenses by category.   A764-774.   That total included ████████ in recoverable electronic discovery costs.  A774.  DuPont substantiated those costs by submitting the underlying invoices from Daegis and declarations from its outside counsel elaborating on its electronic discovery efforts.   A370-373, A598-627, A761-763, A771-772.   Critically, DuPont did not seek recovery of all of its electronic discovery costs; it purposefully excluded costs falling outside of § 1920(4), such as expenses for data hosting, shipping, travel and training costs, and costs of processing copies of documents received from Novozymes.  A885-886. Nor did DuPont seek to recover the cost of any attorney or paralegal time it incurred to fulfill its electronic discovery obligations.   A887 n.5; *see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 255-57 (1975) (attorneys' fees not recoverable under 28 U.S.C. § 1920).

In opposing DuPont's costs request, Novozymes did not identify any of the steps Daegis took as unreasonable or unnecessary for making electronic copies of its native ESI in accordance with the agreed production format.   Nor did Novozymes dispute that DuPont actually incurred these expenses in the case at hand.   Indeed, aside from a conclusory assertion in a footnote that costs for approximately ████████ in hourly labor charges should be denied as "vague and unsupported," A693 n.12, Novozymes did not dispute that the evidence DuPont submitted was sufficient to substantiate its claim.   Instead, Novozymes simply

parsed out a few line items from the Daegis invoices for "TIFF conversion" and scanning laboratory notebook pages, agreed to reimburse those, and then asked the clerk to disallow all the remaining costs as falling outside the scope of § 1920(4). A690-693, A697 ¶4, A704-705.  In the alternative, Novozymes argued that DuPont's electronic discovery costs were unreasonably high because DuPont paid more per page produced than Novozymes.  A693.

The clerk considered the parties' arguments and the evidence DuPont submitted and awarded costs accordingly.  Where the clerk determined that a cost did not "fit into any of the categories found in 28 U.S.C. § 1920," the costs order provided appropriate detail.  A7 ¶2 (declining to tax DuPont's share of the cost for renting the television used in the courtroom during trial).  And when Novozymes questioned the sufficiency of DuPont's proof of reasonableness with respect to non-electronic costs, the clerk addressed Novozymes's concerns and made appropriate findings.  A7 ¶1 (overruling Novozymes's objection that DuPont had submitted insufficient evidence to support a claimed deposition expense).

With respect to the taxation of electronic discovery costs, the clerk granted DuPont's request, noting that "[t]his district has typically included all reasonable costs associated with electronic discovery as part of 'fees for exemplification and the costs of making copies' within the meaning of 28 U.S.C. § 1920(4)[.]"  A7 ¶2. Recognizing that Novozymes's approach of parsing out a few line items ignored

the reality of electronic discovery, the clerk found that all of Daegis's activities were part of "an essentially single process" of copying native ESI into another electronic format for production and that, therefore, "parsing the bills" and "dividing them [by] processes" represented "an impractical and inherently arbitrary effort."  A7-8 ¶2.  The clerk further declined to reduce DuPont's costs as unreasonably high, as they were "associated with the agreed production process."  *Id.*

Novozymes sought district court review of the clerk's award and raised the same arguments in opposition.  A851, A857-865.  After reviewing a second round of briefing on these issues, as well as the clerk's record, the district court rejected Novozymes's argument that DuPont's claimed deposition costs and copying costs incurred by its local counsel were unreasonable.  A3-4.  The district court also reduced the claimed exemplification costs with respect to demonstrative exhibits by half and lowered the costs awarded for copies made by DuPont's local counsel.  *Id.*

The district court affirmed the clerk's electronic discovery award in its entirety.  A2-3.  In doing so, the district court specifically considered the extent to which electronic discovery costs were encompassed by § 1920(4).  *See* A2.  It analyzed the clerk's findings and agreed with DuPont that the clerk had properly applied Seventh Circuit law, noting that Novozymes did "not cite any decisions

from the Court of Appeals for the Seventh Circuit that contradict[ed] [the clerk's] approach." A2. While the district court recognized that *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012) was "on point," it nonetheless rejected the Third Circuit's decision as "not controlling." A3. It further held that the Supreme Court's decision in *Taniguchi v. Kan Pacific Saipan, Ltd.*, __ U.S.___, 132 S.Ct. 1997 (2012) did not disturb the electronic discovery award, explaining that "[t]he sole question in that case was about the scope of a provision that allows costs for interpreters, which is not at issue in this case." *Id*. Finally, the district court exercised its discretion and rejected Novozymes's objection to the reasonableness of DuPont's electronic discovery costs, as Novozymes could not "point to a single [invoice] entry that [was] unreasonable." *Id*. While the district court suggested that Novozymes "waived" this argument, the context of its opinion and the clerk's related findings make clear that the court rejected the reasonableness challenge on the merits as too unsubstantiated to justify reducing DuPont's overall electronic discovery award. *Id*.

## SUMMARY OF ARGUMENT

The district court and clerk correctly concluded that, as a matter of Seventh Circuit law, all of DuPont's claimed electronic discovery costs were taxable to Novozymes as the "costs of making copies of any materials" under § 1920(4). This Court should likewise reject Novozymes's misreading of Seventh Circuit

precedent, as well as its invitation to apply the law of other regional circuits to this case.

The Seventh Circuit has authorized taxation of the precise types of electronic discovery costs that the district court awarded here. *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009). In doing so, the Seventh Circuit interpreted § 1920(4) as, consistent with its plain language, broadly allowing prevailing parties to recover costs "for converting computer data into a readable format," *id.* at 591, necessarily including costs incurred for "processing charges relate[d] to the selection and conversion of electronic documents that did not involve attorney review" and which did not "deviate[] from any request . . . to produce the discovery documents in a specific manner." *Hecker v. Deere & Co.*, No. 3:06-cv-719, ECF No. 132, Order re Bill of Costs at 11 (W.D. Wis. Dec. 31, 2007). As explained below, *infra* Section I.A. & B., this interpretation accords with Seventh Circuit precedent recognizing that expenses necessarily facilitating a cognizable § 1920 cost are likewise recoverable and the undisputed reality that DuPont's electronic discovery costs are, in substance, both indivisible and required to produce ESI in the proper format. Accordingly, the clerk in this case correctly followed Seventh Circuit law when he recognized that "[t]his district has typically included all reasonable costs associated with electronic discovery" as recoverable under § 1920(4). A7 ¶2. The district court, therefore, did not err by affirming the same.

11

Novozymes bases its arguments on decisions by this Court, applying Eleventh Circuit law, and by the Third and Fourth Circuit Courts of Appeals—decisions which do not apply here. This Court must apply regional circuit law with respect to non-patent issues, including the Seventh Circuit's decision in *Hecker* and in other § 1920 contexts. The Supreme Court's decision in *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S.Ct. 1997 (2012) does not change this result. Contrary to Novozymes's suggestion, *Taniguchi* did not alter the Seventh Circuit's view of § 1920, as the dicta from *Taniguchi* that Novozymes relies upon was already evident in earlier Supreme Court precedent, and the Seventh Circuit developed its expansive approach to taxable costs against that very backdrop.

The clerk and the district court also acted well within their discretion when, in accordance with Seventh Circuit law, they found that DuPont's costs were reasonable and necessary. Novozymes did not dispute that DuPont needed to perform all the electronic discovery tasks that it did in order to produce ESI in the parties' agreed-upon format. And the record further demonstrates that both the district court and clerk thoughtfully reviewed the evidence and the arguments presented. On this record, it cannot be said that the district court reached the fundamentally wrong result or otherwise abused its discretion in awarding DuPont its electronic discovery costs, particularly in light of the fact that Novozymes did

not challenge any particular cost or underlying task as unreasonable or unnecessary.

## STANDARD OF REVIEW

Under Seventh Circuit law—which Novozymes agrees governs the issues in this appeal—an appellate court reviews the district court's determination that a prevailing party has submitted sufficient proof to support its costs sought under Rule 54(d) and 28 U.S. § 1920 for an abuse of discretion. *See U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 334 (7th Cir. 2009) (finding "no abuse of discretion" in district court's method of accessing sufficiency of documentation used to substantiate costs); *Weeks v. Samsung Heavy Indus.*, 126 F.3d 926, 945 (7th Cir. 1997) (Seventh Circuit district courts "have broad discretion in determining whether and to what extent prevailing parties may be awarded costs"). Similarly, the Seventh Circuit will affirm a district court's finding that taxed costs were reasonable and necessary "absent . . . a showing of clear abuse of discretion." *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 943 (7th Cir. 1988), *cert. denied*, 492 U.S. 918 (1989); *accord Weeks*, 126 F.3d at 945 (7th Cir. 1997). According to the Seventh Circuit, "'[t]he abuse of discretion standard means something more than our belief that we would have acted differently if placed in the circumstance confronting the district judge;' rather, the district court's decision must strike us as fundamentally wrong." *Cooper v. Eagle River Mem'l Hosp., Inc.*,

270 F.3d 456, 459-60 (7th Cir. 2001) (quoting *Ladien v. Astrachan*, 128 F.3d 1051, 1056 (7th Cir. 1997)).

The only issue presented in this appeal that is subject to a different standard of review is whether Rule 54(d) and § 1920 encompass a particular type of cost, which constitutes a question of statutory interpretation subject to de novo review. *Republic Tobacco Co. v. N. Atl. Trading Co.*, 481 F.3d 442, 447 n.3 (7th Cir. 2007); *Gwin v. Am. River Transp. Co.*, 482 F.3d 969, 974 (7th Cir. 2007).

## ARGUMENT

### I. The Clerk Properly Taxed DuPont's Electronic Discovery Costs, In Accordance With The Seventh Circuit's Inclusive View Of § 1920

#### A. The Seventh Circuit Has Consistently Applied A Broad Interpretation Of § 1920 Costs

As recognized by the Seventh Circuit and other Courts of Appeals, the Supreme Court has not "'prevent[ed] courts from interpreting the meaning of the phrases used in [28 U.S.C.] § 1920.'" *SK Hand Tool*, 852 F.2d at 943-44 (holding that costs of deposition transcripts could be taxed as "stenographic transcript[s] . . . [e]ven though section 1920 does not specifically mention depositions") (quoting *West Wind Africa Line, Ltd. v. Corpus Christi Marine Servs.*, 834 F.2d 1232, 1238 (5th Cir. 1988) (same result)).  Under this authority, when asked to interpret the breadth of § 1920, the Seventh Circuit has repeatedly construed the types of taxable costs broadly.

For example, in *Collins v. Gorman*, 96 F.3d 1057 (7th Cir. 1996), the Seventh Circuit was one of the first circuits to address whether § 1920(1) included process server fees as a taxable cost. *Id.* Despite the fact that in modern litigation marshals had been largely replaced by private process servers, § 1920(1)—enacted decades before—only deemed "[f]ees of the . . . marshal" chargeable. *Id.* at 1058-59. The Seventh Circuit nonetheless held that process server costs were within § 1920(1)'s parameters because that provision "refers to the fees 'of' the marshal but does not require payment 'to' the marshal." *Id.* at 1060 (reasoning that "[f]rom the losing litigant's perspective, it is irrelevant who delivers the papers, provided the total outlays do not exceed what the marshal would have charged").

Notably, the Seventh Circuit explained that while the statutory language "[did] not compel this understanding," it was "best to resolve the ambiguity" ***in favor of recovery***, in light of changes to the Federal Rules of Civil Procedure authorizing service by private parties and amendments "designed to reduce the expense of litigation without altering who must bear that expense." *Id.* In doing so, the Seventh Circuit expressly rejected the narrow interpretation of § 1920(1) given by the Eighth Circuit, which precluded any recovery of costs for private process servers. *See id.; see also Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985) (§ 1920 does not allow prevailing party to recover costs where service effected by "special process server").

Later, in *Cefalu v. Village of Elk Grove*, 211 F.3d 416 (7th Cir. 2000), the
Seventh Circuit again opted for a broad construction of § 1920—this time with
respect to the term "exemplification" in § 1920(4), the same subsection at issue
here. In *Cefalu*, the Seventh Circuit considered whether "fees for exemplification"
should include approximately $27,000 the defendant paid for developing an
electronic multi-media system that showed exhibits to a jury. *Id.* at 427-29. The
district court had declined to charge these costs, limiting "exemplification" only to
fees "associated with the physical preparation of exhibits." *Id.* at 427. The
Seventh Circuit reversed the district court's construction as unduly narrow,
reasoning that "in view of the illustrative purpose of exemplification," the
formalistic distinction "between producing an exhibit and presenting that exhibit"
was not "the most appropriate [line] to draw." *Id.* at 428 (explaining that "we find
no limits inherent in the term 'exemplification' that would permit a court to award
costs for the more familiar means of illustration—models, charts, graphs, and the
like—but preclude it from compensating a party for an animated reconstruction of
an accident, for example, or other types of computer-based, multimedia displays").

Instead, in keeping with the inherently broad nature of the term
"exemplification," the Seventh Circuit held that, "[s]o long as ***the means of
presentation furthers the illustrative purpose*** of an exhibit," the cost of the
presentation should be taxable. *Id.* (emphasis added). Providing a real-world

16

example, the Seventh Circuit explained that "[a]llowing fees for the cost of preparing the transparency but not for renting the projector would . . . be a highly formalistic distinction, as each is key to the illustrative function of the exhibit"; as such, both components should be charged as costs. *Id.*

Other Seventh Circuit decisions have embraced *Cefalu*'s teaching that categories of taxable costs should be interpreted to encompass tasks needed to facilitate a particular taxable item. For instance, in *Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 38 F.3d 1429 (7th Cir. 1994), the court held that both the "costs for the copying ***and collating of exhibits*** . . . fall squarely within" the pre-2008 version of § 1920(4) as "[f]ees for exemplification and copies of papers." *Id.* at 1441 (emphasis added). Similarly, in *Held v. Held*, 137 F.3d 998 (7th Cir. 1998), the Seventh Circuit held that § 1920(2) included "deposition attendance fees charged by the court reporter," despite the fact that "these fees are not specifically mentioned in the statute." *Id.* at 1002.

The Seventh Circuit reaffirmed this principle in *Extra Equipamentos E Exportação Ltda. v. Case Corp.*, 541 F.3d 719 (7th Cir. 2008), the principal Seventh Circuit decision that Novozymes offers in support of its position that the Seventh Circuit has "consistently" followed a "narrow approach" when interpreting § 1920. Novozymes-Br. 16. Despite the fact that court reporter attendance fees are not listed in § 1920(2), in *Extra Equipamentos* the Seventh

17

Circuit once again found them taxable, reasoning that "[s]ince the reporter cannot make the transcript without attending the hearing, the separate attendance fee is properly regarded as a component of the fee for the transcript." *Id.* at 727 (citations omitted). In fact, the court emphasized that market forces underscored the necessity of an expansive approach to interpreting § 1920, recognizing that any alternative, formalistic interpretation would be nothing more than arbitrary: "[s]ome reporters charge a separate fee for attending the trial or hearing," while "others roll that fee into the fee for the transcript itself." *Id.*

In *Extra Equipamentos*, the Seventh Circuit also considered the appropriate interpretation of "compensation for interpreters." 28 U.S.C. § 1920(6). The court held that, given the "specificity" of language in § 1920(6), this phrase did not include expenses for translating written documents. 541 F.3d at 727. Accordingly, the Seventh Circuit properly declined to broaden "compensation for interpreters"—a phrase that possesses a significantly narrower definition than the statutory language at issue in this appeal—to include such expenses, as such an construction would exceed the reasonable limits of the statutory text. *See* 541 F.3d at 727-28 ("An interpreter as normally understood is a person who translates living speech from one language to another."). Nor could the *Extra Equipamentos* court apply the "facilitation" principle reflected in *Cefalu*, *Haroco*, and its own holding with respect to court reporter attendance fees, because, unlike the

circumstances present in those cases and in this appeal, document translation expenses are *not* a necessary component, nor are they incurred in immediate furtherance, of the costs of compensating interpreters to translate live testimony. *See Cefalu*, 211 F.3d at 428 (holding taxable costs under § 1920(4) included expenses for creating multi-media trial presentation because they were "the means" that "further[ed]" the overall presentation of evidence).

**B.** **In *Hecker*, The Seventh Circuit Broadly Interpreted "Costs Of Making Copies Of Any Materials" To Include The Types Of Electronic Discovery Costs Awarded Here**

**1.** **The Seventh Circuit Has Already Addressed The Question Of Statutory Construction Presented In This Appeal**

Consistent with its disposition to broadly construe the categories of taxable costs in § 1920, the Seventh Circuit has interpreted § 1920(4)—"[f]ees for exemplification and the costs of making copies of any materials"—to cover precisely the types of electronic discovery costs that the district court awarded to DuPont. Specifically, in *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), the Seventh Circuit addressed the key issue presented in this appeal and interpreted § 1920(4) as authorizing the recovery of an extensive range of electronic discovery costs.

In *Hecker*, the plaintiffs brought class action claims under the Employment Retirement and Income Security Act alleging that their employer, their retirement plan's trustee, and their plan's investment advisor breached the fiduciary duties

19

owed to the plaintiffs. *Id.* at 578. After the district court granted the defendants'

motion to dismiss, defendant Fidelity subsequently sought to recover nearly

$160,000 in electronic discovery costs under § 1920(4). *Hecker v. Deere & Co.*,

No. 3:06-cv-719, ECF No. 132, Order re Bill of Costs at 11 (W.D. Wis. Dec. 31,

2007). Of that amount, approximately $140,000 involved "processing charges

relate[d] to the selection and conversion of electronic documents that did not

involve attorney review," which the plaintiffs acknowledged complied with the

production format used in the litigation. *Id*. The plaintiffs objected to recovery of

these costs, contending that expenses for document "processing" were not

recoverable. *Id.*; *see also* ECF No. 124, Plaintiffs' Objections to the Fidelity

Defendants' Bill of Costs at 4, 4 n.3 (W.D. Wis. Nov. 30, 2007) (objecting to costs

for "Electronic Discovery Services," particularly costs for "processing" ESI, as

"not recoverable"). The clerk of the court overruled that objection and taxed all of

Fidelity's electronic discovery costs. *See* ECF No. 132 at 11-12; *Hecker*, 556 F.3d

at 591.

The plaintiffs in *Hecker* appealed both the underlying merits dismissal and

the costs award to the Seventh Circuit. *See Hecker*, 556 F.3d 575. While most of

the court's opinion addressed the merits of the underlying dispute, the Seventh

Circuit also expressly affirmed the district court's taxation of electronic discovery

costs, holding that § 1920(4) allowed Fidelity to recover costs "for converting

computer data into a readable format in response to plaintiffs' discovery requests." *Id.* at 591. With this holding, the Seventh Circuit necessarily interpreted "costs of making copies of any materials" as encompassing the ESI "processing charges" awarded by the district court. *Id.*

In its opening brief, Novozymes ignores the import of the specific electronic discovery items that the district court awarded and the Seventh Circuit affirmed and, thus, fundamentally misreads *Hecker* as standing for the narrow proposition that the Seventh Circuit would interpret § 1920(4) as only providing for the costs of file format conversion and copying the actual production items to DVDs. Novozymes-Br. 28-29. Courts in the Seventh Circuit have not employed such an unduly restrictive interpretation.

After *Hecker*, district courts within the Seventh Circuit have repeatedly held that electronic discovery costs attributable to the overall production process, such as those that the district court and clerk taxed in this case, are recoverable. *See, e.g.*, *Goldberg v. 401 Wabash Venture LLC*, 2013 WL 4506071, at *7 (N.D. Ill. Aug. 23, 2013) (awarding "costs related to electronic discovery . . . for electronically processing, hosting, and producing documents," as "it is undisputed that electronic discovery costs are available under Section 1920(4)") (citations omitted); *United States ex. rel. Yannacopoulos v. General Dynamics*, 2012 WL 1748120, at *3 (N.D. Ill. May 15, 2012) (awarding costs under § 1920(4) for

electronic discovery costs that were "reasonable, and were used necessarily in the course of litigation, as they were incurred in responding to plaintiff's production request"); *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, 2011 WL 5008425, at *8 (N.D. Ill. Oct. 20, 2011) (awarding electronic discovery "vendor costs" described as "Blowbacks, Repository Services, Logical Unitizing, and Reassembly Services," as "the advances in electronic discovery have changed the nomenclature of the discovery process"); *Promote Innovation LLC v. Roche Diagnostics Corp.*, 2011 WL 3490005, at *1 (S.D. Ind. Aug. 9, 2011) (awarding costs incurred for a broad array of electronic discovery activities, including the use of search terms, de-duplication, repair of corrupted files, and fixing database errors); *Comrie v. IPSCO Inc.*, 2010 WL 5014380, at *4-5 (N.D. Ill. Dec. 1, 2010) (noting prevailing party's request for "costs for the analysis, storage, extraction, and recovery of ESI that [the party] was required to process and review in response to Plaintiff's discovery requests," and taxing all "costs of conversion, processing and extraction" as "necessary to [the party's] ESI production"); *Sunbeam Prods., Inc. v. Homedics, Inc.*, 2010 WL 2571983, at *2 (W.D. Wis. June 21, 2010) (affirming the clerk's decision to tax costs associated with the reading and copying of electronic data from tapes and disks); *Ridings v. Riverside Med. Ctr.*, 2007 WL 924020, at *2 (C.D. Ill. Mar. 26, 2007) (awarding costs of electronically processing relevant discovery into searchable format, as "Defendant indicate[d] this [work] was

necessary to the litigation to enable Defendant to search [the information] requested by Plaintiff using the search terms agreed upon by the parties"). This precedent evidences the well-established principle that such costs are recoverable under Seventh Circuit law.

The district court and clerk were, therefore, correct to apply Seventh Circuit law instead of the unduly crabbed approach advanced by Novozymes, explaining that Seventh Circuit district courts like itself "typically include[] all reasonable costs associated with electronic discovery as part of 'fees for exemplification and the costs of making copies' within the meaning of 28 U.S.C. § 1920(4)." A2. Although the Southern District of Illinois has in two recent unpublished opinions erroneously disregarded Seventh Circuit precedent—choosing instead to adopt Novozymes's and the Third Circuit's contrary approach reflected in *Race Tires*— the Seventh Circuit has yet to distinguish *Hecker* on this point, let alone contemplate overruling it. *See* Novozymes-Br. 29-30

Nor is the Third Circuit's approach in *Race Tires* uniformly accepted, as Novozymes suggests. Like district courts in the Seventh Circuit, *see, e.g.*, *Goldberg*, 2013 WL 4506071, at *7, courts in the Ninth Circuit have expressly rejected *Race Tires* in favor of the broader approach in *Hecker*. *See, e.g.*, *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 2012 WL 1610979, at *4 (N. D. Cal. May 8, 2012) (rejecting *Race Tires* in favor of a "broad construction of § 1920

with respect to electronic discovery costs" including costs associated with any "essential component . . . of reproducing disclosure or formal discovery documents" and electronic discovery "work performed by technicians"); *In re Online DVD Rental Antitrust Litig.*, 2012 WL 1414111, at * 1 (N.D. Cal. Apr. 20, 2012) (similar).[2]

### 2. As The District Court And Clerk Properly Found, All Of DuPont's Claimed Electronic Discovery Costs Are Recoverable Under *Hecker* And § 1920(4)

Applying Seventh Circuit law, the district court properly taxed all of DuPont's claimed electronic discovery costs to Novozymes as "costs . . . for converting computer data into a readable format," *Hecker*, 556 F.3d at 591, and "costs of making copies of any materials," 28 U.S.C. § 1920(4).

The district court firmly grounded its award in the plain language of § 1920(4). "Making copies" sweeps broadly to include activities resulting in an "imitation, transcript, or reproduction of an original work." *See* Merriam-Webster Dictionary online, http://www.merriam-webster.com/dictionary/copy; *Country*

---

[2] To the extent that Novozymes suggests that these decisions have been overruled or undermined by the Supreme Court's decision in *Taniguchi*, which was issued two months after *Race Tires*, such a contention would be in error. *GoDaddy.com* and *In re Online DVD Rental Antitrust Litigation* relied on the Ninth Circuit's earlier decision in *Taniguchi* only for the well-settled proposition that "'[d]istrict courts are free to interpret the meaning of the cast of categories listed within § 1920.'" *In re Online DVD Rental Antitrust Litig.*, 2012 WL 1414111, at *1 (quoting *Taniguchi v. Kan Pacific Saipan, Ltd.*, 633 F.3d 1218, 1221 (9th Cir. 2011)); *GoDaddy.com*, 2012 WL 1610979, at *4 (same).

24

*Vintner of North Carolina, LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 259 (4th Cir. 2013) (recognizing that "the ordinary meaning of the phrase ["copying"] is expansive"). And "any materials" has similarly far-reaching application. *See* Merriam-Webster Dictionary online, http://www.merriam-webster.com/dictionary/materials (defining "material" as "the elements, constituents, or substances of which something is composed or can be made" or "matter that has qualities which give it individuality and by which it may be categorized"). In fact, Congress expanded the language of § 1920 from "copies of papers" to "the costs of making copies of any materials," reflecting the statute's broad application. 154 Cong. Rec. H10270, H10271 (daily ed. Sept. 27, 2008) (stating that Congress added the new language to "mak[e] electronically produced information coverable in court costs").

The collection of native ESI from DuPont's computer systems plainly constitutes a form of copying under § 1920(4). That process necessitates the actual copying of native data onto another storage medium—commonly referred to as "imaging" in electronic discovery parlance. *See* The Sedona Conference, *The Sedona Conference Glossary: E-Discovery & Digital Information Management* 27 (3rd ed. 2010) ("To image a hard drive is ***to make an identical copy*** of the hard drive") (emphasis added). In addition to *Hecker*, the Seventh Circuit's decision in *Haroco* supports such a result. There, the Seventh Circuit applied the "facilitation"

25

principle to award not only the costs of copying exhibits, but also those of the necessary, attendant process of collating those documents, which is analogous to the required initial copying and sorting of native ESI in electronic discovery. *See* 38 F.3d at 1441 (holding that such attendant costs "fall squarely" under § 1920(4)). Similarly, the Northern District of Illinois has recognized that the prior version of § 1920(4) encompassed costs for making **both pre-production and actual production copies**, because "[i]dentifying and copying documents that may be responsive to a document request are necessary steps in any document production." *Bus. Sys. Eng., Inc., v. Int'l Bus. Machines Corp.*, 249 F.R.D. 313, 315 (N.D. Ill. 2008); *accord Nilssen v. Osram Sylvania, Inc.*, 2007 WL 257711, at *6 (N.D. Ill. Jan. 23, 2007). Outside the Seventh Circuit, this Court held in *CBT Flint Partners v. Return Path, Inc.*, 737 F.3d 1320 (Fed. Cir. 2013), that costs associated with the initial copying of native ESI fell within the ambit of § 1920(4). *Id.* at 1329 (holding that "a party often must make a first copy of a document" in discovery and this initial "step[]" is nonetheless "fairly considered [a] cost[] of making copies of the requested documents").

The extraction of metadata and native text also constitutes "copying" of "materials" and, therefore, fall within the ambit of § 1920(4). Metadata is part of the underlying native document and provides information about the elements or attributes of that particular document (*e.g.*, the date the document was created).

*See* Sedona Conference Glossary at 34. Where, as here, the production format requires converting native ESI into a TIFF format, the metadata in the native document must be ***recorded*** separately in a different electronic format before any file conversion takes place. A similar process occurs during OCR, wherein the underlying text is separately ***copied*** to preserve the text-search functionality present in the original document, as the TIFF conversion process removes that original characteristic. *See generally* Amelia Phillips et al., E:Discovery: An Introduction to Digital Evidence 15 (explaining how converting native documents to TIFF images destroys the ability to text search). In other words, to produce a ***complete copy*** of a native document in TIFF format, the underlying metadata and native text must undergo separate duplication and production. *See* Sedona Conference Glossary at 31 (noting that extracted text and metadata are commonly produced, as here, in separate "load files"). Metadata and native text are also plainly "materials"—*i.e.*, "elements" of an electronic document that possess "individual[]" "qualities"—and thus the "costs of making copies" of those items are taxable under § 1920(4). In arguing that metadata is not encompassed by § 1920(4), Novozymes errs by artificially limiting the statutory text—"any materials"—to cover only "electronic documents." *See* Novozymes-Br. 31, 36; *see Mid-Con Freight Sys., Inc. v. Michigan Pub. Serv. Comm'n*, 545 U.S. 440, 463

27

(2005) (declining to place an "artificial narrowing construction on broad but clear statutory text")

Even the non-Seventh Circuit authority that Novozymes cites supports the proposition that metadata and OCR extraction constitute recoverable "copying." For instance, as this Court recognized in *CBT Flint Partners*, "[t]o the extent that a party is obligated to produce . . . electronic documents . . . with particular characteristics intact (such as metadata, color, motion, or manipulability), the costs to make duplicates . . . ***with such characteristics preserved*** are recoverable as 'the costs of making copies . . . necessarily obtained for use in the case.'" 737 F.3d at 1328 (quoting 28 U.S.C. § 1920(4)). The Court explained that it "[did] not see why it makes a difference that the process of making a single production copy may involve first creating one electronic duplicate of the two-part 'document' (visible content, metadata), then creating a production copy of each part." *Id.* at 1329. Likewise, in *Country Vintner*, the Fourth Circuit suggested that it too would find the costs associated with metadata extraction recoverable if production of that metadata was required. 718 F.3d at 260 n.19 ("If, for instance, a case directly or indirectly required production of ESI-unique information such as metadata, we

28

assume, without deciding, that taxable costs would include any technical processes necessary to copy ESI in a format that includes such information.").[3]

Likewise, additional processing costs that DuPont incurred, such as data extraction, indexing, and filtering, are taxable. As noted above, these costs were awarded under § 1920(4) by the district court in *Hecker* and affirmed by the Seventh Circuit as taxable costs for "converting computer data into a readable format." *See Hecker v. Deere & Co.,* No. 3:06-cv-719, ECF No. 132, Order re Bill of Costs at 11 (W.D. Wis. Dec. 20, 2007), *aff'd*, 556 F.3d 575, 591 (7th Cir. 2009).

The Seventh Circuit's "facilitation" principle and its application in *Extra Equipamentos* and *Cefalu* also support an inclusive interpretation that captures expenses for "processing" and other associated electronic discovery costs, such as project management fees, that are undisputedly necessary to copying and producing ESI in the agreed production format. In *Extra Equipamentos*, the Seventh Circuit expanded the meaning of "stenographic transcripts," previously included in § 1920(2), to include both deposition transcription fees and related attendance fees charged by the court reporter. 541 F.3d at 727. "Since the reporter cannot make the transcript without attending the hearing," the Seventh Circuit concluded that a fair construction of taxable deposition costs would include both

---

[3]  The Third Circuit appears to be the only Court of Appeals that has recognized a *per se* bar to recovering metadata costs under § 1920(4). *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012).

the transcription and attendance fees. *Id.* Indeed, because "[s]ome reporters charge a separate fee for attending the trial or hearing" while "others roll that fee into the fee for the transcript itself," the Seventh Circuit declined to disallow the attendance fee. 541 F.3d at 727. Similarly, in *Cefalu*, the Seventh Circuit held that costs under § 1920(4) included consulting expenses incurred for creating a multi-media trial presentation because the presentation was "the means" that "further[ed]" the production of evidence. 211 F.3d at 428

The costs associated with electronic discovery are analogous and clearly recoverable under the Seventh Circuit's "facilitation" principle. The electronic discovery costs that Novozymes disputes here constitute a bundle of services that are all necessary to facilitate copying DuPont's ESI into the agreed production format. Just as in *Extra Equipamentos*, where the Seventh Circuit observed that court reporters could forego charging attendance fees and still recoup those costs by charging higher transcription rates, here electronic discovery vendors could similarly shift costs between the various components of their bundle without altering the total financial cost. For example, a vendor could cease charging hourly project management fees in favor of commensurately higher TIFF conversion rates, the latter of which even Novozymes agrees fall under § 1920(4). The vendor's client (such as DuPont) would still need both sets of services and ultimately pay the same overall price to have its ESI produced. As recognized

below, disregarding this reality when interpreting § 1920(4) would result in "an impractical and inherently arbitrary effort to divide an essentially single process into separate components."  A7-8; *see also Cefalu*, 211 F.3d at 428 (rejecting, in the context of "exemplification," the "highly formalistic" distinction between "[a]llowing fees for the cost of preparing the transparency but not for renting the projector, as each is key" to presenting evidence).  Seventh Circuit law is not unique in this regard, as other courts have also followed this principle when awarding costs under § 1920(4).  *See Jardin v. DATAllegro*, 2011 WL 4835742, at *5-9 (S.D. Cal. Oct. 12, 2011) (holding that that "costs *stemming from the process* of [TIFF] conversion," including project management and ESI processing expenses, fall under § 1920(4)) (emphasis added); *LG Electronics*, 2011 WL 5008425, at *7 (holding that fees charged by "technological consultants" for assisting with evidence presentation at trial, beyond expenses of copying actual exhibits, constituted recoverable "exemplification," as such services represented an "efficient, time-saving method of presenting complex evidence under the circumstances").

Finally, Seventh Circuit law precludes prorating DuPont's electronic discovery expenses to account for the difference between the native documents it processed and the subset of those documents it ultimately produced.  *Compare with CBT Flint Partners*, 737 F.3d at 1330 (suggesting that, under Eleventh Circuit law,

expenses associated with tasks performed on a broader ESI collection should be prorated by the proportion of documents actually produced). In addition to contravening the plain text of § 1920(4)—which permits taxing the costs of copying "any materials" and not simply "produced" ones—introducing a complex apportionment requirement when assessing costs under § 1920 is simply incompatible with the Seventh Circuit's directive to simplify that process where possible. *See Hairline Creations, Inc. v. Kefalas*, 664 F.2d 652 (7th Cir. 1981) (holding that "the assessment of costs most often is merely a clerical matter that can be done by the court clerk"). Novozymes appears to agree on this point. *See* Novozymes-Br. 31 (conceding that a "complicated taxation system"—including proration of "imaging and extraction costs in order to limit reimbursement to those costs incurred solely for produced documents"—"is inconsistent with the simple clerical assessment envisioned by the Seventh Circuit").

### C. The Court Must Faithfully Apply Seventh Circuit Law To The Instant Appeal

As Seventh Circuit law governs this appeal, it is that circuit's precedent that applies here, including the decisions in *Hecker*, *Cefalu*, *Extra Equipamentos*, and others. This Court's decision in *CBT Flint Partners*—which interpreted § 1920(4) de novo under Eleventh Circuit law and did so more narrowly than *Hecker*—is inapposite. Similarly, the Third Circuit's decision in *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012) and the Fourth Circuit's

decision in *Country Vintner of North Carolina, Inc. v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249 (4th Cir. 2013) are not Seventh Circuit precedent and have no bearing on how this Court should resolve the instant appeal.

The policy underlying this Court's deference to regional circuit law on non-patent issues—"minimizing confusion and conflicts in the federal judicial system"—further supports affirmance of the district court's ruling. *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574-75 (Fed. Cir. 1984) (citations omitted). Should this Court vacate the district court's costs award, it would upset the well-settled expectations of the district courts and litigants in the Seventh Circuit, particularly with respect to patent cases subject to appellate review by this Court. *See In re Int'l Med. Prosthetics Research Assocs., Inc.*, 739 F.2d 619, 620 (Fed. Cir. 1984) ("Dealing daily with such procedural questions in all types of cases, a district court cannot and should not be asked to answer them one way when the appeal on the merits will go to the regional circuit in which the district court is located and in a different way when the appeal will come to this circuit."). And where, as here, "a dispute is totally unrelated to patent issues and the resolution of that dispute does not impinge on the goal of patent law uniformity," this Court has urged heightened deference to regional circuit law. *Panduit*, 744 F.2d at 1574.

Even if this Court were to conclude that *Hecker* does not fully resolve the statutory interpretation issue presented in this case (which it should not, as discussed *supra* Section I.B), it should nonetheless affirm the district court's judgment. This Court must place itself in the shoes of the Seventh Circuit, and given that court's inclusive disposition to recoverable costs—including its decision in *Hecker* and the "facilitation" principle set forth in *Cefalu*, *Haroco*, and *Extra Equipamentos*—any de novo interpretation would yield highly different results than the conclusions other circuits reached in *CBT Flint Partners*, *Race Tires*, and *Country Vintner*. This is all the more likely because, unlike the Seventh Circuit, the Eleventh Circuit has generally taken a narrower approach to interpreting § 1920. *See, e.g.*, *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1297 (11th Cir. 2001) (declining to adopt the Seventh Circuit's "broader construction" of "exemplification" under § 1920(4)).

## D. *Taniguchi* Is Consistent With Seventh Circuit Law

Novozymes ignores the Seventh Circuit's "facilitation" principle and approach to interpreting § 1920(4), contending that *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S.Ct. 1997 (2012), forecloses the award of costs here. But *Taniguchi* dealt with § 1920(6), not § 1920(4). *Id.* There, the Supreme Court declined to interpret the phrase "compensation for interpreters" to include expenses for translating foreign language documents. *See id.* at 2007; 28 U.S.C. § 1920(6).

The holding in *Taniguchi* cannot be controlling because it concerns an entirely distinct statutory provision and category of costs than those at issue in the instant appeal.

Novozymes erroneously suggests that *Taniguchi* somehow implicitly overrules the Seventh Circuit's expansive framework for awarding costs. As Novozymes itself acknowledges, *Taniguchi* did not set forth any new guidance with respect to interpreting the breadth of § 1920. *See* Novozymes-Br. 16; A906. The Supreme Court has long emphasized that § 1920 does not give the federal judiciary "roving authority" to tax costs. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 (1975). The Supreme Court reaffirmed that principle in *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987), stating that when Congress adopted the predecessor statute to § 1920, it "meant to impose rigid controls on cost-shifting in federal courts." *Id.* at 444. Quite obviously, these Supreme Court decisions all predate the Seventh Circuit's decisions applying the "facilitation" principle under § 1920, and the Seventh Court reached those decisions in light of the same. *See supra* Sections I.A & B. Indeed, as demonstrated in the Seventh Circuit's decision in *Extra Equipamentos*, the general precept that § 1920 should be limited to the enumerated categories is entirely consistent an inclusive approach that, to the extent allowed by the statutory language, permits the recovery of costs necessary to facilitate those categories.

There, the Seventh Circuit applied the "facilitation" principle to § 1920(2) and at the same time—foreshadowing *Taniguchi*—narrowly construed the "specific[]" language of § 1920(6), implicitly recognizing that as document translation expenses were not necessary to facilitate oral interpretation, such costs fell outside § 1920(6)'s scope. 541 F.3d at 727 (holding that "[s]ince the reporter cannot make the transcript without attending the hearing, the separate attendance fee is properly regarded as a component of the fee for the transcript" under § 1920(2)).

While *Taniguchi* does say that taxable costs under § 1920 are "***relatively minor, incidental expenses***," Novozymes takes that quote out of context. 132 S.Ct. at 2006 (emphasis added); *see also Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.*, 801 F.2d 908, 911 (7th Cir. 1986) (similar). *Taniguchi* clearly explains that taxable costs under § 1920 are minor, not an in absolute sense, but relative to the total expenses borne by the parties to prosecute the case. 132 S.Ct. at 2006 ("Taxable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators, [and] almost always amount to less than the successful litigant's total expenses in connection with a lawsuit.") (citation omitted). While not insignificant, the electronic discovery costs taxed here represent only a small fraction of the total expenses incurred to litigate the underlying case from inception through trial—indeed, Novozymes's attorney's

fees alone in this case exceeded $6.5 million dollars.  A949, 964-66 ¶¶ 2-4, 1308-09 ¶¶ 2-4.

Nor does the Seventh Circuit's approach in *Hecker*, followed by the district court below, foretell a dramatic rise in the magnitude of costs awarded under § 1920(4).  As this Court explained in *CBT Flint Partners*, parties to a litigation can control costs by agreeing to simple, less-expensive electronic production formats—such as producing ESI only in native format—in  contrast to the TIFF format adopted by DuPont and Novozymes in the Joint Pretrial Submission.  737 F.3d at 1330 (holding that should parties agree to produce ESI natively, "only the costs of that simpler process [would] be chargeable under section 1920(4)").  The parties also remain free to contract around § 1920(4)'s default rules by entering into alternative cost shifting arrangements.  *See In re Ricoh Co., Ltd. Patent Litig.*, 661 F.3d 1361, 1366 (Fed. Cir. 2011) ("If parties can exceed allowable costs under section 1920 by contract, we see no reason why . . . they cannot likewise limit the allowable costs under section 1920 by contract.").  DuPont had no need to enter into such an agreement with Novozymes in this case, as it relied on the general practice in the Seventh Circuit to tax electronic discovery costs broadly.

## II.     The District Court Did Not Abuse Its Discretion By Refusing To Reduce DuPont's Necessary Electronic Discovery Costs

### A.     DuPont Is Presumptively Entitled To Costs As The Prevailing Party

The Seventh Circuit has repeatedly held that prevailing parties, such as DuPont, are entitled to a "strong presumption" in favor of awarding costs.  *See, e.g., U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 333 (7th Cir. 2009); *Park v. City of Chicago*, 297 F.3d 606, 617 (7th Cir. 2002); *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997); *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir. 1991).  While the prevailing party must provide evidence that the costs were incurred for the case at hand, to defeat the presumption in favor of awarding costs, the "***losing party***" must make an "***affirmative showing that taxed costs are not appropriate***."  *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005) (citation omitted) (emphasis added); *see also Harney v. City of Chicago*, 702 F.3d 916, 927 (7th Cir. 2012) (the "losing party has the burden of demonstrating that taxed costs are not appropriate") (citation omitted); *Weeks*, 126 F.3d at 945 (holding that "[t]he presumption in favor of awarding costs to the prevailing party is difficult to overcome" and that "to overcome [this] presumption, the losing party must show some fault, misconduct, default or action worthy of penalty by the prevailing side") (citation omitted).

Novozymes takes up this burden on appeal by arguing, with selective specificity, that DuPont failed to substantiate its asserted electronic discovery costs. *See* Novozymes-Br. 37-39, 41-42. Yet Novozymes waived any argument concerning the sufficiency of DuPont's evidence by failing to properly advance this argument in the district court. As discussed above, the only argument below remotely touching on this issue was Novozymes's general statement, buried in a footnote, that the descriptions for the project management services performed by Daegis were too vague. A690-693, A693 n.12, A857-865. Setting aside Novozymes's selective application of this argument—which makes no analogous claim with respect to DuPont's evidence in support of its other claimed electronic discovery costs—such a statement is insufficient to preserve the issue for appellate review. *See SmithKline Beecham Corp. v. Apotex Corp.,* 439 F.3d 1312, 1320 (Fed. Cir. 2006) (holding that arguments raised only in footnotes are waived); *see also Ajinomoto Co., Inc. v. Int'l Trade Comm'n*, 597 F.3d 1267, 1278 (Fed. Cir. 2010) ("[A] conclusory assertion unaccompanied by developed argumentation does not preserve the issue for appeal.") (citation omitted); *Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1441 (7th Cir. 1994) ("We do not address plaintiffs' arguments that the charges were unreasonably high or unsubstantiated because they did not raise those issues before the district court and the issues are factual and wholly unrelated to statutory interpretation."). Rather, as

the district court correctly explained, Novozymes principally objected that "the amount [Dupont] claim[ed] for electronic discovery [was] too high." A3.

In any event, the district court did not abuse its discretion by awarding DuPont its costs. DuPont was only "required to provide the best breakdown obtainable from retained records," which it did by submitting the Daegis invoices—which themselves described the specific tasks performed—and calculated the total amount of costs incurred. *See Northbrook Excess Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991) (stating that a prevailing party is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover . . . costs"), *superseded in other part by* Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406 § 6, 122 Stat. 4291, 4292 (2008 amendment broadening §1920(4) to encompass electronic discovery costs); *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1410 (7th Cir. 1991) (holding that the district court did not abuse its discretion where, as here, the prevailing party submitted "itemized costs [that] were supported with invoices"). Contrary to Novozymes's assertion that DuPont failed to justify its costs, as explained above, DuPont went beyond these requirements by submitting a declaration from a paralegal at its outside law firm that further explained the nature and types of tasks that Daegis performed. A761-763 ¶¶1-9. Accordingly, the clerk and the district court acted

well within their discretion to credit DuPont's evidence as sufficient to support the claimed electronic discovery expenses, particularly given the presumption in DuPont's favor and Novozymes's inadequate objections.

### B.   DuPont's Electronic Discovery Costs Were Reasonable And Necessary Because They Were Incurred To Respond To Novozymes's Discovery Requests

In addition to determining that § 1920 authorizes taxation of a particular type of cost, the district court, in the exercise of its discretion, must determine whether the expenditure was reasonable and necessary to the litigation.  *See Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000) (the district court is afforded wide discretion to determine whether "the cost was necessary to the litigation" and "what amount is reasonable") (quoting *Weeks*, 126 F.3d at 945). Here, the district court did exactly that in awarding DuPont ███████ in electronic discovery costs.  A774.

Novozymes does not contend that the activities Daegis undertook to copy DuPont's ESI into the agreed production format were not necessary to the underlying litigation.  *See* Novozymes-Br. 37.  Nor could it.  Both the Seventh Circuit and this Court agree that if a prevailing party incurs an electronic discovery cost that falls within the taxation statute in the course of complying with an agreed production format (such as the Joint Pretrial Statement executed by the parties here) that expenditure qualifies as "necessary" to the litigation.  *See Hecker v.*

41

*Deere & Company*, 556 F.3d 575, 591 (7th Cir. 2009) (holding that recoverable costs include "converting computer data into a readable format *in response to plaintiffs' discovery requests*") (emphasis added); *see also CBT Flint Partners*, 737 F.3d at 1328 ("[R]ecoverable costs under section 1920(4) are those costs necessary to duplicate an electronic document in as faithful and complete a manner *as required by rule, by court order, by agreement of the parties, or otherwise*.") (emphasis added).[4]

While conceding this point, Novozymes incorrectly argues that the parties' production format has no relevance to the district court's reasonableness determination. *See* Novozymes-Br. 33-34. While the parties' production format agreement does not expressly deal with recoverable costs, it is nonetheless central to any reasonableness determination as it sets forth the breadth and nature of the production obligations applicable to the litigation. Given the scope of the production format agreement, the electronic discovery costs DuPont incurred were both necessary and reasonable. DuPont could not simply copy all of its native ESI onto a storage medium and hand it over to Novozymes. Rather, the parties' agreement required DuPont to copy its ESI and paper documents from their native

---

[4] For the first time, on appeal, Novozymes argues that the district court abused its discretion in awarding DuPont the costs of making three—instead of two—copies of its final production set. *See* Novozymes Br. 32-33. As with its belated challenge to the sufficiency of DuPont's costs evidence, Novozymes waived this argument by failing to raise and develop it at the district court. *See supra* Section II.A.

form and convert them into a production set of "single-page TIFF images with multi-page extracted OCR text files and all metadata fields agreed to by the parties . . . includ[ing] a Concordance and a Summation load file." A925. Doing so necessarily resulted in additional electronic discovery costs beyond those associated with a limited native production or inspection, which Novozymes could have demanded. *See* Fed. R. Civ. P. 34(a)(1)(A) (authorizing physical inspection of ESI), 34(b)(2)(E)(ii) (stating that requesting party can "specify a form for producing [ESI]" in its discovery requests). Because it is undisputed that DuPont's claimed electronic discovery costs were necessary to the litigation, the district court did not abuse its discretion by concluding that the amounts incurred were reasonable.

### C. The Amount Of Electronic Discovery Costs DuPont Incurred And The District Court Awarded Do Not Amount To A Per Se Abuse Of Discretion

The district court likewise did not abuse its discretion by overruling Novozymes's argument that DuPont's electronic discovery costs should have been lower. A3. This is particularly true given that Novozymes apparently concedes that it did not identify any specific electronic discovery cost as unreasonable to the district court below. Novozymes-Br. 38. Coupled with the undisputed fact that DuPont sought competitive bids for the electronic discovery work in this case (A771 ¶30) and that all its electronic discovery expenses were necessary to the

litigation (A771 ¶26), the district court did not abuse its discretion when it denied Novozymes's overbroad reasonableness challenge. *See Z Trim Holdings, Inc. v. Fiberstar, Inc.*, 2008 WL 3843507, at *2 (W.D. Wis. Aug. 12, 2008) (explaining that the district court "need not conduct a painstaking inspection" of the reasonableness of specific costs because "[i]n general, market incentives will do a better job keeping costs in check than the court could possibly do after the fact").

Both the clerk and the district court below conducted a thorough analysis of the parties' arguments and submitted evidence, and Seventh Circuit law protects that analysis from second-guessing on appeal. *See, e.g., U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 334 (7th Cir. 2009) (finding no abuse of discretion where district court reviewed the prevailing party's expenses and found them to fall within 28 U.S.C. § 1920); *Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995) (refusing to find an abuse of discretion in the award of costs because it was "amply confined by . . . the district court's careful consideration in its order"). The bill of costs DuPont submitted was not merely rubber-stamped—rather, the clerk and district court carefully considered the evidence and twice removed the costs they found unjustified, as discussed above. *See A3-8*; *see also Zahran v. Cleary Bldg. Corp.*, 2 Fed. Appx 497, 500 (7th Cir. 2001) (holding that no abuse of discretion occurred where, as here, "the district court sustained several of [the losing party's] objections to the bill of costs, disallowing [some costs]").

In any event, Novozymes's argument that DuPont's electronic discovery costs were unreasonably high is fundamentally flawed. Novozymes purports to compare the total taxable costs that the district court awarded DuPont to the amounts awarded in what it inexplicably deems "comparable cases." *See* Novozymes-Br. 38. But any argument that DuPont's recoverable electronic discovery costs should be reduced based on the costs paid by litigants in other cases is contrary to both the law and common sense. The measure of costs for § 1920 are those ***actually incurred by the prevailing party***—here DuPont—not by other litigants in other cases that may or may not have had the same, if any, electronic discovery burdens. *See, e.g., Krocka v. City of Chicago*, 203 F.3d 507, 518 (7th Cir. 2000) (explaining that there is "a presumption that the prevailing party will recover *its* costs") (emphasis added).

Novozymes's argument that the costs award should be vacated as an abuse of discretion because Novozymes found a way to pay less per page for its own electronic discovery production fails for the same reason. The fact that Novozymes incurred fewer costs than DuPont is irrelevant to whether DuPont may recover its actual costs. Novozymes was apparently able to realize certain efficiencies because its outside counsel set up an in-house facility for electronic discovery, a unique service which it offers for client use. A1332-1335. But there is no requirement that a law firm operate an in-house electronic discovery facility

45

to lower its client's costs.  And contrary to what Novozymes suggests, the absolute dollar amount of costs taxed in this case is far from unprecedented.  *See, e.g., Tampa Bay Water v. HDR Eng'g, Inc.*, 2012 WL 5387830, at \*21 (M.D. Fla. Nov. 2, 2012) (taxing \$3.1 million in "electronic discovery costs"); *In re Online DVD Rental Antitrust Litig.*, 2012 WL 1414111, at \*1-2 (N.D. Cal. Apr. 20, 2012) (taxing \$710,194.23 in costs, including costs for electronic discovery production); *BASF AG v. Great Am. Assur. Co.*, 595 F. Supp. 2d 899, 904 (N.D. Ill. 2009) (awarding one defendant \$851,448.50 under 28 U.S.C. § 1920); *Lockheed Martin Idaho Techs. Co. v. Lockheed Martin Advanced Envtl. Sys., Inc.*, 2006 WL 2095876, at \*2 (D. Idaho July 27, 2006) (taxing \$4.6 million in costs under 28 U.S.C. § 1920(4) for creation of litigation database).  Indeed, electronic discovery is notoriously expensive, particularly in complicated patent litigation such as the case at bar.  *See* 1 Jay E. Grenig & William C. Gleisner, III, eDiscovery & Digital Evidence § 7:3 (2013) (noting that "[e]xpenditures made on eDiscovery, preservation, collection and production can end up costing millions of dollars").

Novozymes also fails to cite any precedent in which a court reduced a costs award simply because one party was able to obtain services at a lower rate than the other.  In *Netcraft Corp. v. eBay, Inc.*, 2008 WL 4175039 (W.D. Wis. June 12, 2008), the prevailing party neglected to "offer a compelling reason" to justify the difference in costs for producing PowerPoint presentations.  *Id.* at \*1.  Here, in

46

contrast, DuPont clearly explained the divergence in the parties' electronic discovery costs: Novozymes was apparently able to realize savings by utilizing its outside counsel's in-house electronic discovery facilities in lieu of an outside vendor. Further, Novozymes misreads the disparity in costs at issue in *LeMoine v. Combined Commc'ns Corp.*, 1996 WL 435115 (N.D. Ill. July 31, 1996). The "large disparity" in costs found in *LeMoine* was not predicated on the parties making copies "of the same materials" (*see* Novozymes-Br. 40)—rather, the court in *LeMoine* determined the discrepancy in copying costs was caused by the prevailing party copying an entire file as opposed to just the "necessary" documents. 1996 WL 435115, at *2. In the instant appeal, Novozymes has conceded that DuPont's electronic discovery costs were necessarily incurred. *See* Novozymes-Br. 37.

## CONCLUSION

For the reasons discussed above, the Court should affirm the district court's judgment in its entirety. To the extent that the Court concludes that the district court abused its discretion, DuPont requests that the Court vacate and remand to allow the trial court to exercise its discretion.

Dated: March 3, 2014

Respectfully submitted,

*/s/ Tracey B. Davies*

Tracey B. Davies
   *Principal Attorney*
Michael A. Valek
Jason C. McKenney
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2964
tdavies@gibsondunn.com

*Counsel for Defendants-Appellees*

## CERTIFICATE OF SERVICE

I, Tracey B. Davies, hereby certify that on March 3, 2014, a true and correct copy of the Confidential Brief for Defendants-Appellees was electronically filed with the Clerk of the Court using CM/ECF and was served on the following counsel via electronic mail, and that two true copies of the foregoing document will be served via third-party commercial carrier for next-day delivery on the following counsel within five days of the Court's acceptance of the document:

Virginia K. DeMarchi
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041

I further certify that on March 3, 2014, a true and correct copy of the Nonconfidential Brief for Defendants-Appellees was electronically filed with the Clerk of the Court using CM/ECF and was served on counsel of record who have registered for such service as of March 3, 2014.


   */s/ Tracey B. Davies*
Tracey B. Davies

*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 11,045 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

Dated:  March 3, 2014

  */s/ Tracey B. Davies*
Tracey B. Davies

*Counsel for Defendants-Appellees*